Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC.,   ) | **No. C-11-03826 DMR** |
|                   ) | |
|         Plaintiff,     ) | **PLAINTIFF'S *EX PARTE* APPLICATION** |
|    v.               ) | **FOR LEAVE TO TAKE** |
|                   ) | **EXPEDITED DISCOVERY WITH** |
| DOES 1-130,        ) | **EXPANDED JOINDER DISCUSSION** |
|                   ) | |
|         Defendant(s).   ) | |
|                   ) | |

**TABLE OF CONTENTS**

I.      PROCEDURAL HISTORY ................................................................................ 2

III.    BACKGROUND ............................................................................................... 4

IV.     FACTS ............................................................................................................. 5

V.      PLAINTIFF'S LEGAL BASIS FOR EXPEDITED DISCOVERY IN THIS MATTER .......... 6

   1.   Legal Standard for Expedited Discovery. ................................................. 6

   2.   Plaintiff Satisfies the Three-Pronged Seescandy.com Test. ..................... 8

      a.   Plaintiff identifies Does Defendant(s) with sufficient specificity. ................... 8

      b.   Plaintiff has adequately exhausted all possible means to identify Does. .......... 8

      c.   Plaintiff's Amended Complaint would survive a motion to dismiss. ................ 9

   3.   Plaintiff Satisfies the Semitool "Good Cause" Standard for Expedited Discovery. .............. 9

   4.   Doe Defendant(s) Have No Legitimate Expectation of First Amendment Privacy. ............ 11

VI.     PLAINTIFF'S BASIS FOR JOINING DOES 1-130 ............................................. 12

   1.   Legal Standard for Joinder ....................................................................... 12

   2.   Joinder is Proper at this Early Stage of the Litigation ............................ 13

      a.   Plaintiff has exhaustively satisfied this Court's concerns raised in *Pacific Century*. ...... 13

      b.   Plaintiff's allegations plainly satisfy the Rule 20(a)(2) requirements for joinder. .......... 14

      c.   Joinder at the early discovery stage of the litigation promotes principles of fundamental fairness. ........ 15

      d.   Severance at this stage of the litigation would separate an essentially unitary problem. ............ 19

   3.   Courts that have Found Misjoinder in Similar Cases Misunderstood the BitTorrent Protocol ............ 20

VII.    CONCLUSION .............................................................................................. 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)......................................7

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ...........................6

*Elvis Presley Enter., Inc. v. Passport Video*, 349 F.3d 622 (9th Circuit 2003) .................9

*Equidyne Corp. v. Does 1-21*, 279 F.Supp. 2d 481 (D. Del. 2003) ....................................5

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ..........................................................5

*Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001)......................................................................9

*In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003)...........................................8

*In re Gren*, 633 F.2d 825 (9th Cir. 1980)........................................................................10

*Interscope Records v. Does 1-14,* 558 F.Supp.2d 1176 (D. Kan 2008)...............................9

*IO Group, Inc. v. Does 1-65*, 2010 U.S. Dist. LEXIS 114039, Case No. 10-4377 (N.D. Cal.

    2010) ............................................................................................................................5

*Laxalt v. McClatchy*, 809 F.2d 885 (D.C. Cir. 1987) .....................................................10

*Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, LLC*, 204 F.R.D. 675 (D. Colo. 2002)...........8

*Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418 (D. Colo. 2003)..................8

*Rocker Mgmt. LLC v. John Does*, WL 22149380, Case No. 03-MC-33 (N.D. Cal. 2003) .................6

*Semitool v. Tokyo Electron America, Inc., et al.*, 208 F.R.D. 273 (N.D. Cal. 2002)...............5, 6, 8, 9

*Sony Music Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004)..........................9

*Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358 (2d Cir. 1974) .....................................17

*Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753,

    Case No. 10-00335 (E.D. Cal. 2010)...........................................................................5

*U.S. v. Hambrick*, 55 F.Supp.2d 504 (W.D. Va. 1999), *aff'd,* 225 F.3d 656 (4th Cir. 2000)..............9

*UMG Recordings, Inc. v. Does 1-4*, 64 Fed. R. Serv.3d 305 (N.D. Cal. 2006) ........................... 5, 6, 9

*UMG Recordings, Inc. v. John Doe*, 2008 U.S. Dist. LEXIS 79087, Case No. 08-1193 (N.D.

    Cal. 2008) ............................................................................................................................ 8

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) ......................................................... 5

*Warner Bros. Records, Inc. v. Does 1-6*, 527 F.Supp. 2d 1 (D.D.C. 2007) .................................. 5, 8

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612 (D. Ariz. 2001) ......................... 8

*Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL 4313777 (N.D. Cal. Oct. 26, 2010) .................. 17

*Zoosk Inc. v. Does 1-25*, 2010 U.S. Dist. LEXIS 134292 (N.D. Cal. 2010) ..................................... 5

**Statutes**

17 U.S.C. § 106(1)(3) ........................................................................................................... 14

**Other Authorities**

Jessica Wood, *The Darknet: A Digital Copyright Revolution*, XVI Rich. J.L. & Tech. 14

    (2010) ............................................................................................................................... 22

**Rules**

Fed. R. Civ. P. 20 ................................................................................................................. 18

Fed. R. Civ. P. 21 ................................................................................................................. 18

**Treatises**

7 C. Wright Federal Practice and Procedure § 1653 .............................................................. 18

Schwarzer, Tashima, and Wagstaffe, *Cal. Prac. Guide Fed. Civ. Pro. Before Trial* Ch.

    16:160.3 ........................................................................................................................ 20, 28

1    **PLAINTIFF'S *EX PARTE* APPLICATION FOR, AND MEMORANDUM OF LAW WITH
     EXPANDED JOINDER DISCUSSION IN SUPPORT OF, LEAVE TO TAKE DISCOVERY
2    PRIOR TO RULE 26(f) CONFERENCE**

3          Plaintiff Hard Drive Productions, Inc., by and through its undersigned counsel, and pursuant

4    to Federal Rules of Civil Procedure ("FRCP") 26 and 45, hereby moves this Court *ex parte* for an

5    Order permitting Plaintiff to take limited discovery prior to the FRCP 26(f) conference. Plaintiff's

6    Application is in accordance with the Local Rule ("L.R.") 7-10, as it is authorized under FRCP 26(d)

7    and 45.

8          Plaintiff requests the Court's permission to issue subpoenas to various Internet Service

9    Providers (hereinafter "ISPs") in order to collect subscriber information related to Internet Protocol

10   (hereinafter "IP") addresses listed on Exhibit A to its Amended Complaint. (ECF No. 6.) Plaintiff's

11   agents observed these IP addresses being used to unlawfully reproduce and distribute Plaintiff's

12   copyrighted video over the Internet via the BitTorrent protocol by Doe Defendant(s). This

13   information is necessary to identify Doe Defendant(s) in this case because Defendant(s) operated

14   under the cover of IP addresses, which concealed their true identity.

15         Recently, certain courts in this District have expressed concern about granting expedited

16   discovery to plaintiffs with respect to all of the IP addresses listed in a complaint, and have instead

17   only allowed discovery with respect to a single IP address. Notwithstanding the foregoing, an

18   overwhelming majority of courts nationwide have allowed discovery with respect to all IP addresses.

19   In order to address the concerns raised by certain courts in this District, Plaintiff has supplemented

20   this memorandum with a discussion of why discovery is appropriate with respect every IP address

21   identified in the Amended Complaint. Specifically, Plaintiff argues that discovery is proper with

22   respect to all the IP addresses listed in its Amended Complaint because Plaintiff's pleadings satisfy

23   the prerequisites for permissive joinder, allowing this case to proceed in a consolidated manner for

24   the early discovery phase of the litigation promotes principles of "fundamental fairness" and because

25   severance at the early stage of the litigation would involve separation of a fundamentally unitary

26   problem.

27

28

## I.   PROCEDURAL HISTORY

This action was filed on August 3, 2011. (Complaint, ECF No. 1.) On September 28, 2011, Plaintiff filed an Amended Complaint to further bolster its joinder of Doe Defendants. (Amended Complaint, ECF No. 6, [hereinafter "Amended Complaint."])

Plaintiff filed the Amended Complaint preemptively based on this Court's intervening decision in a similar BitTorrent-based infringement case: *Pacific Century International LTD., v. Does 1-101*, No. C 11-02533 DMR (N.D. Cal. 2011). The pleadings, *ex parte* applications, and declarations in that case are very similar to those presented to the Court in this case.  In that case, the plaintiff filed an *Ex Parte* Application for Leave to Take Discovery on May 26, 2011, requesting to identify the individual doe defendant(s) prior to the scheduled FRCP 26(f) conference. *Id.*, ECF No. 5. On July 8, 2011, this Court issued an Order granting the *Ex Parte* Application for one doe defendant but then severed the remaining doe defendant(s) after finding misjoinder. *Id.*, ECF No. 7. In severing the remaining doe defendant(s), the Court explained that "[a]ttempts to join numerous defendants in a single action for copyright infringement over P2P networks historically have failed." *Id.* at *4. This Court cited several cases for this proposition: *Interscope Records v. Does 1-25*, No. 4-CV-197, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004), *Elektra Entertainment Group, Inc. v. Does 1-9*, No. 04-Civ-2289, 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004), *Fonovisa, Inc. v. Does 1-9*, No. 07-1515, 2008 WL 919701, at *5-6 (W.D. Pa. Apr. 3, 2008), and *Io Group, Inc. v. Does 1-435*, No. C-10-4382, 2011 WL 445043, at *3 (N.D. Cal. Feb. 3, 2011).

This Court in *Pacific Century* rejected the plaintiff's argument that the BitTorrent protocol is distinguishable from the technology used for copyright infringement in the above cases. The Court explained that while the BitTorrent protocol may result in a higher collaboration among peers in any given swarm than the more archaic forms of peer-to-peer transfers, the plaintiff did not shown any collaboration among peers existing in different swarms. *Pacific Century*, No. C 11-02533 DMR, ECF No. 7 at *5-6. The Court took issue with the *ex parte* application and attached declaration because they left open the possibility that defendant(s) in the case could be involved in multiple swarms and with multiple files. *Id.* at *6. The Court explained that doe defendant(s) could download

1  different versions of the same copyrighted work (i.e. a low definition versus a high definition file)

2  and never actually interact with one another. (*Id.*) Therefore, the Court found that the plaintiff "failed

3  to demonstrate that it has 'any right to relief against Defendants arising out of the same transaction,

4  occurrence, or series of transactions or occurrences'," and severed all but one doe defendant from

5  the case. Id. at *7 (citing Fed. R. Civ. P. 20(a)(2)(A)).

6       On July 13, 2011, the plaintiff in *Pacific Century* brought a Motion for Leave to File

7  Amended Complaint. *Pacific Century*, No. C 11-02533 DMR, ECF No. 8. The plaintiff explained

8  that doe defendant(s) in the case were in fact involved in the exact same swarm and all downloaded

9  and uploaded the exact same file. *Id.* After reviewing the plaintiff's Proposed Amended Complaint

10  (*Id.*, ECF No. 8-1), the Court found that amending the complaint would prove to be futile because

11  the Proposed Amended Complaint still indicated "that the unnamed defendants participated in one of

12  several swarms sharing the File . . ." *Id.* ECF No. 17 at *2. The Court denied the plaintiff's motion.

13  *Id.*

14       On August 23, 2011, the plaintiff brought a Renewed Motion for Leave to File First

15  Amended Complaint (ECF No. 19) with Proposed First Amended Complaint. *Id.*, ECF No. 19-1.

16  This time the plaintiff properly addressed this Court's concerns about doe defendant(s) participating

17  in different swarms and downloading and uploading different files. This Court granted the plaintiff's

18  Renewed Motion for Leave to File First Amended Complaint on August 24, 2011. *Id.*, ECF No. 20.

19  On September 27, 2011, the plaintiff filed the First Amended Complaint. *Id.*, ECF No. 21.

20       Plaintiff in the present case filed its Amended Complaint to better address this Court's

21  concerns raised in *Pacific Century*. Plaintiff now brings this *Ex Parte* Application for Leave to Take

22  Discovery with Expanded Joinder Section. The analysis and arguments in this brief fully address

23  joinder and this Court's previous concerns raised in *Pacific Century*.

24                           **II.    INTRODUCTION**

25       Plaintiff Hard Drive Productions, Inc., filed this action to stop Defendant(s) from

26  reproducing and distributing to others over the Internet unauthorized copies of its unique content

27  (hereinafter "the Work"), and to pursue monetary damages against Defendant(s). Using so-called

28

"peer-to-peer" (hereinafter "P2P") file transfer networks, Defendant(s)' copyright infringements allow them and untold others to unlawfully obtain and distribute for free and without Plaintiff's permission the copyrighted Work that Plaintiff has invested substantial sums of money to create. Plaintiff is suing Defendant(s) as Doe Defendant(s) because Defendant(s) committed their infringement under the cover of IP addresses, instead of using their actual names. Plaintiff has identified the Doe Defendant(s)' IP addresses (as well as other pertinent information), and attached this list to the Amended Complaint as Exhibit A (ECF No. 6-1.)

Plaintiff seeks leave of Court to serve *limited* discovery prior to a Rule 26(f) conference on several enumerated non-party ISPs *solely* to determine the true identities of Doe Defendant(s) that Plaintiff will fully identify during the course of this litigation.[1] The only way that Plaintiff can determine Doe Defendant(s)' actual names is by first getting Subscriber information linked to the IP addresses on Exhibit A to the Amended Complaint from the ISPs, and, from there, determine the Doe Defendant that accessed the network and unlawfully downloaded Plaintiff's copyrighted works. This information is readily available to the ISPs from documents they keep in the regular course of business, and getting it is of minimal effort to them.

### III.    BACKGROUND

This request is far from unique. Granting such applications is commonplace. Over the past decade, federal district courts throughout the Ninth Circuit and the United States have freely permitted expedited discovery in Doe Defendant lawsuits with factually interchangeable scenarios.

As this Court is aware, in these types of cases, copyright-holder plaintiffs use information similar to that gathered by Plaintiff in the instant case as the basis for their proposed subpoenas to the ISPs. Through the information they gather from the ISPs via these subpoenas, the plaintiffs are

---

[1] To be clear, Plaintiff is asking the Court for the identifying information of the ISP subscriber whose IP address was used to unlawfully distribute Plaintiff's copyrighted Work via BitTorrent (hereinafter "Subscriber"). The labels "Doe Defendant" and "Subscriber" are used interchangeably throughout this brief for good reason: they often represent one-and-the-same individual. In other words, the individual who subscribes in the household is in fact the infringer. For instance, an individual who lives alone with a secure wireless Internet connection is very likely to be both the Subscriber and Doe Defendant. In contrast, where the subscriber is, for example, the wife of the household it is probably the case—given the nature of Plaintiff's content—that the husband or a college-aged son is the appropriate Doe Defendant. In other words, in the latter example the Subscriber and the Doe Defendant are most likely not the same individual and limited additional discovery is needed to identify the Doe Defendant.

4

1   able to fully "identify" – i.e. retrieve name, address, telephone number, e-mail address, and Media

2   Access Control (hereinafter "MAC") information – each network Subscriber whose network was

3   used in violating the plaintiff's copyrighted work.  As the Court understands, usually, in the interest

4   of due process, the court will order the ISP to adequately notify the network user whose contact

5   information has been turned over to the plaintiff that such action has occurred, and has ample

6   opportunity to quash the subpoena. Once the plaintiff has a Subscriber's contact information, a

7   further investigation will be conducted identify exactly who—i.e. the Doe Defendant—downloaded

8   Plaintiff's work over the Subscriber's network, the Doe Defendant will be contacted and formally

9   named in the suit, service of process will be effectuated, and the case will proceed as normal. (Decl.

10  of Brett L. Gibbs (hereinafter "Gibbs Decl.") ¶ 4, Exhibit B to this Application).

11  Plaintiff respectfully requests that this Court follow well-established precedent and grant this

12  application for leave to take expedited discovery against those ISPs listed in Exhibit A to the

13  Amended Complaint (ECF No. 6-1).

14              **IV.    FACTS**

15  Doe Defendant(s), without authorization, used an online P2P media distribution system to

16  download Plaintiff's copyrighted works and distribute Plaintiff's copyrighted works to the public,

17  including making Plaintiff's copyrighted works available for distribution to others. (Amend. Compl.

18  ¶ 1, 8-10, 29-30, 32-34, 39-44.) Defendant(s) operated under the cover of network addresses when

19  they swarmed and distributed Plaintiff's copyrighted works. As such, Plaintiff is unaware of Doe

20  Defendant(s)' actual names. (Declaration of Peter Hansmeier (hereinafter "Hansmeier Decl.") ¶¶ 21-

21  22, 27. Exhibit A to this Application.) As referenced above, Plaintiff has identified each Doe

22  Defendant by a unique IP address, assigned to a Subscriber by his/her ISP on the date and at the time

23  of the Doe Defendant(s)' infringing activity. (*Id.* ¶¶ 20, 22.) Plaintiff, by and through its

24  investigators, also made a copy of substantial portions of the copyrighted work that each Doe

25  Defendant unlawfully distributed or made available for distribution through the file sharing

26  networks, and confirmed that such files contained the work that was copyrighted by Plaintiff. (*Id.* ¶

27

28

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY          No. C-11-03826 DMR

25.) A technician collected this data through specific systems and procedures designed to ensure that the information gathered on each Doe Defendant was accurate. (*Id.* ¶¶ 16, 26.)

Media Copyright Group, LLC's ("MCG") proprietary file sharing forensic software captured the unique IP address over which the Defendant(s) unlawfully infringed Plaintiff's copyrighted works. Through this software, Plaintiffs have been able to identify certain ISPs that provided Internet access and a unique IP addresses to each Subscriber.   (*Id.* ¶¶ 20, 24.) When provided with a Subscriber's IP address and the date and time of the infringing activity, an ISP can accurately identify the Subscriber because such information is contained in the ISP's Subscriber activity log files. (*Id.* ¶¶ 22, 27.)

In Plaintiff's case, time for discovery is of the essence. Typically, ISPs keep log files of subscriber activities for only limited periods of time before erasing the data. Sometimes this storage may only last for only weeks or even days. (*Id.* ¶¶ 23, 28.) Some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. (*Id.* ¶ 29.) These lessor ISPs, therefore, have no direct contractual or business relationship with the end-user. (*Id.*) Because of this detachment, they are unable to identify the Subscribers through their logs on their own without the assistance of their intermediary ISPs that should be able to identify the Subscribers by reference to their own user logs and records working in conjunction with the lessor ISPs. (*Id.*)

## V.        PLAINTIFF'S LEGAL BASIS FOR EXPEDITED DISCOVERY IN THIS MATTER

### 1.   Legal Standard for Expedited Discovery.

As the Honorable District Court Judge Edward M. Chen has pointed out, courts have wide discretion in organizing discovery. *Semitool v. Tokyo Electron America, Inc., et al.*, 208 F.R.D. 273 (N.D. Cal. 2002). Courts typically allow for expedited discovery "in the interests of justice" under Rule 26(d). *E.g., id.; Texas Guaranteed Student Loan Corp. v. Deepinder Dhindsa*, 2010 U.S. Dist. LEXIS 65753, Case No. 10-00335 (E.D. Cal. 2010). Courts commonly find it "in the interests of justice" to allow accelerated discovery to identify doe defendants. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("…district court erred in dismissing [Plaintiff's] complaint against Doe simply because [Plaintiff] was not aware of Doe's identity at the time he filed the complaint.");

*Equidyne Corp. v. Does 1-21*, 279 F.Supp. 2d 481, 483 (D. Del. 2003) (district court granted expedited discovery motion to allow the plaintiff to identify unknown defendant(s)). In similarly situated copyright infringement actions brought by other motion picture studios, record companies, and producers against doe defendant(s), courts have consistently granted plaintiffs' motions for leave to take expedited discovery to serve subpoenas on ISPs to immediately obtain the identities of subscribers/doe defendant(s) prior to a Rule 26(f) conference. *E.g., Warner Bros. Records, Inc. v. Does 1-6*, 527 F.Supp. 2d 1 (D.D.C. 2007) (plaintiff requests, and court allows, expedited Rule 45 subpoena service on Georgetown University to obtain identifying information—including name, current and permanent addresses, telephone numbers, email addresses, and MACs—of doe defendant(s)). This Court's rulings have steadfastly followed this established rule. *E.g.*, *UMG Recordings, Inc. v. Does 1-4*, 64 Fed. R. Serv.3d 305 (N.D. Cal. 2006); *IO Group, Inc. v. Does 1-65*, 2010 U.S. Dist. LEXIS 114039, Case No. 10-4377 (N.D. Cal. 2010); *Zoosk Inc. v. Does 1-25*, 2010 U.S. Dist. LEXIS 134292 (N.D. Cal. 2010).

When the identity of a doe defendant is indeterminable at the time the complaint is filed, the plaintiff "should be given an opportunity through discovery to identify the unknown defendant(s), unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Based in part on *Gillespie*, a three-prong expedited-discovery-qualifying test was outlined by this Court in *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999). In order for a plaintiff to qualify for expedited discovery to identify nameless Internet users, the plaintiff must: (1) show whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity capable of being sued in federal court; (2) identify all previous steps taken to locate elusive defendant; and (3) establish that the suit could withstand a motion to dismiss. *Seescandy.com*, 185 F.R.D. at 578-578; *see also Rocker Mgmt. LLC v. John Does*, WL 22149380, Case No. 03-MC-33 (N.D. Cal. 2003) (court interprets and applies *Seescandy.com* standard in allowing limited expedited discovery).

In determining whether a plaintiff is entitled to expedited discovery in identifying a doe defendant, the district courts in the 9th Circuit implement an overarching "good cause" standard. *E.g., Semitool,* 208 F.R.D. at 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*; *see also UMG Recordings,* 64 Fed. R. Serv.3d 305 (The Honorable District Court Judge Edward M. Chen cogently lays out all of the issues, analyzes the application of rules to facts, and concludes that the plaintiff is entitled to leave to take immediate discovery).

## 2. Plaintiff Satisfies the Three-Pronged Seescandy.com Test.

### a. Plaintiff identifies Does Defendant(s) with sufficient specificity.

As required, Plaintiff has sufficiently identified the Doe Defendant(s) through locating the unique IP address each Doe Defendant was associated with at the time of the unauthorized distribution of the copyrighted Works. (Hansmeier Decl. ¶¶ 20-23); *see also, e.g.*, *Seescandy.com*, 185 F.R.D. at 578-580 (such information satisfies "sufficient specificity" prong). These Doe Defendant(s) gained access to the Internet through the respective IP addresses (Hansmeier Decl. ¶¶ 20, 22.) The ISPs can identify each Subscriber by name through the IP address by reviewing its subscriber activity logs. (*Id.* ¶¶ 22, 27.) From there, Plaintiff can ascertain whether the Subscriber is the Doe Defendant or whether another member of the Subscriber's household is the same. Thus, Plaintiff can show that all Defendant(s) are "real persons" that are known to the ISP and who can be sued in federal court. Plaintiff simply requests that this Application be granted so that Plaintiff can match the IP address with its "real person" counterpart.

### b. Plaintiff has adequately exhausted all possible means to identify Does.

Plaintiff has exhausted all possible means to attempt to find the Doe Defendant(s)' names, addresses, phone numbers, email addresses, and MAC addresses. Plaintiff lacks any other means to obtain the subpoenaed information except from discovery through the ISPs themselves. Plaintiff has specifically identified the steps taken to identify Doe Defendant(s)' identities. (*Id.* ¶¶ 18-21, 24-26.) Plaintiff has obtained each Doe Defendant(s)' IP addresses and the date and time of the Defendant(s)' infringing activities, have traced each IP address to specific ISPs, and has made copies

of the Works each Defendant unlawfully distributed or made available for distribution. (*Id.* ¶¶ 20, 24-25.) At this point, Plaintiff has obtained all of the necessary information it possibly can on each Doe Defendant without discovery from the ISPs. (Gibbs Decl. ¶ 3.) Plaintiff needs this limited information from the ISPs to simply connect the dots.

### c. Plaintiff's Amended Complaint would survive a motion to dismiss.

If the Court denies this Application, the Court would strike a fatal blow in Plaintiff's otherwise meritorious case. (*Id.* ¶ 2.) Ascertaining the true identities of these copyright infringers is the only thing holding this case back from proceeding forward. (*Id.* ¶ 4.) The only way to timely ascertain these identities is for the Court to grant this application.

Plaintiff has asserted a *prima facie* claim for direct copyright infringement in its Amended Complaint that can withstand a motion to dismiss. Specifically, Plaintiff has alleged that: (a) it owns the exclusive reproduction and distribution rights, and exclusive rights under the copyright for the Works for which a valid application for registration has been filed, and (b) the Doe Defendant(s) copied or distributed the copyrighted Work without Plaintiff's authorization. (Amend. Compl. ¶¶ 6-10, 25-27, 29-30, 32-34, 39-44.) These allegations adequately state a claim for copyright infringement. *See* 17 U.S.C. § 106(1-3); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003).

There is little question that the Doe Defendant(s) violated Plaintiff's rights. Now Plaintiff simply must be allowed to identify who they are.

### 3. Plaintiff Satisfies the Semitool "Good Cause" Standard for Expedited Discovery.

As Judge Chen stated in *Semitool*, "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." 208 F.R.D. at 276. Courts have wide discretion in discovery matters and in interpreting "good cause." *See Id.*; *Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213

1    F.R.D. 418, 419 (D. Colo. 2003); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612,

2    613-14 (D. Ariz. 2001); *Warner Bros.,* 527 F.Supp.2d at 2.

3           In this case, good cause exists because Plaintiff's need for the information sought in its

4    subpoenas outweighs negligible prejudice to the copyright violating Doe Defendant(s) and the ISPs.

5           Good cause exists here because ISPs typically retain user activity logs containing the

6    information sought for only a limited period of time before erasing the data. (Hansmeier Decl. ¶¶ 23,

7    28; Gibbs Decl. ¶ 6.) If that information is erased, Plaintiff will have no ability to fully identify the

8    Doe Defendant(s), and thus will be unable to pursue a lawsuit protecting itself against their illegal

9    activity. (*Id.*) Where "physical evidence may be consumed or destroyed with the passage of time,

10   thereby disadvantaging one or more parties to the litigation," good cause exists for expedited

11   discovery under FRCP 26(d). *Qwest Comm.*, 213 F.R.D. at 419; *see also Pod-Ners, LLC v. Northern*

12   *Feed & Bean of Lucerne, LLC*, 204 F.R.D. 675, 676 (D. Colo. 2002) (court allowed for expedited

13   discovery where evidence would not be available to the plaintiff in the normal course). Put simply,

14   Plaintiff may lose the ability to bring this suit without being able to timely serve the ISPs with

15   subpoenas.

16          Good cause also exists because Plaintiff's claim for copyright infringement presumes

17   irreparable harm to copyright owner. *UMG Recordings, Inc. v. John Doe*, 2008 U.S. Dist. LEXIS

18   79087, Case No. 08-1193 (N.D. Cal. 2008) (the Honorable Judge Armstrong noted that, "In Internet

19   infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a

20   Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie

21   showing of infringement, there is no other way to identify the Doe defendant, and *there is a risk an*

22   *ISP will destroy its logs prior to the conference*… This is because, in considering 'the administration

23   of justice,' early discovery avoids ongoing, continuous harm to the infringed party and there is no

24   other way to advance the litigation."); *see also Semitool*, 208 F.R.D. at 277; *Elvis Presley Enter.,*

25   *Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Circuit 2003). Not only will Plaintiff's suit will be

26   fatally damaged if not permitted to conduct expedited discovery, but Plaintiff's own unique

27   copyrighted Work will be instantly devalued if the Court denies this motion.

28

1

### 4. Doe Defendant(s) Have No Legitimate Expectation of First Amendment Privacy

2

3

4

5

6

7

8

9

10

11

12

13

14

As Judge Chen pointed out in *UMG Recordings*, Doe Defendant(s) who "open[ed] their computers to others through peer-to-peer sharing" and signed service agreements with ISPs that did not have privacy stipulations, "had little expectation of privacy." 64 Fed. R. Serv.3d at 305. The Doe Defendant(s) here fall under this purview for the same reasons. The Doe Defendant(s) are, at best, involved in quasi-speech, and Plaintiff's overriding interests in protecting its copyright overshadow any limited speech implications on the part of the Defendant(s). They have no legitimate expectation of privacy in the subscriber information they voluntarily provided to third-parties, i.e. the ISPs, much less in downloading and distributing copyrighted Works without Plaintiff's permission. *See id.*; *see also Sony Music Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (court finds that "defendant(s) have little expectations of privacy in downloading and distributing copyrighted songs without permission"); *Interscope Records v. Does 1-14,* 558 F.Supp.2d 1176, 1178 (D. Kan 2008); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001); *U.S. v. Hambrick*, 55 F.Supp.2d 504, 508 (W.D. Va. 1999), *aff'd,* 225 F.3d 656 (4th Cir. 2000).

15

16

17

18

19

20

21

22

23

Doe Defendant(s) copied and distributed the Works without authorization under the cover of IP addresses, and, therefore, their conduct was not entirely anonymous. Using publicly available technology, the unique IP address assigned to each Doe Defendant at the time of infringement can be readily identified. (Hansmeier Decl. ¶¶ 20, 22.) As set forth above, this identification information is linked to the Doe Defendant(s)' IP addresses at the time of infringement, and recorded in the ISPs' respective subscriber activity logs. Since Doe Defendant(s) can, as a consequence, have no legitimate expectation of privacy in this information, this Court should grant Plaintiff leave to seek expedited discovery of their indentifying information. Absent such leave, Plaintiff will be unable to protect its copyright its copyrighted Works from continued infringement.

24

25

26

Where federal privacy statutes authorize disclosure pursuant to a court order, courts have held that a plaintiff must make no more than a showing of relevance under the traditional standards of Rule 26. *Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987); *In re Gren*, 633 F.2d 825 n.3

27

28

1   (9th Cir. 1980) ("court order . . . [only requires] good faith showing that the consumer records

2   sought are relevant.") Clearly, Plaintiff meets the relevance standard.

3   **VI.    PLAINTIFF'S BASIS FOR JOINING DOES 1-130**

4        Joinder is appropriate at the early discovery stage of this litigation for several reasons. First,

5   Plaintiff's allegations plainly satisfy the pleading requirements for joinder. Second, joinder at this

6   stage of the litigation promotes principles of fundamental fairness. Third, severance at this stage of

7   the litigation would constitute an abuse of discretion because it would separate an essentially unitary

8   problem. Finally, the explanations given in support of prior decisions to sever are either addressed

9   by Plaintiff's enhanced pleadings or inherently non-meritorious.

10       **1. Legal Standard for Joinder**

11       Rule 20(a)(2) of the Federal Rules of Civil Procedure ("FRCP") permits the joinder of

12   defendants in one action if: 1) any right to relief is asserted against them jointly, severally, or in the

13   alternative with respect to or arising out of the same transaction, occurrence, or series of transactions

14   or occurrences; and 2) any question of law or fact common to all defendants will arise in the action.

15   Fed. R. Civ. P. 20(a)(2).

16       Claims arise out of the "same transaction or occurrence" if they share similar factual

17   backgrounds. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Claims possess sufficient

18   factual similarity if they "arise out of a systematic pattern of events." *Bautista v. Los Angeles*

19   *County*, 216 F.3d 837, 842-43 (citations omitted). To aid in their application of the "transaction or

20   occurrence test," courts look to how the test is applied in other provisions of the Federal Rules, such

21   as Rule 13(a). *Mosley v. General Motors Corporation*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The

22   Supreme Court states that the meaning of "transaction", as used in Rule 13(a), "may comprehend a

23   series of many occurrences, depending not so much upon the immediateness of their own connection

24   as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926).

25   Accordingly, "Rule 20 would permit all reasonably related claims by or against different parties to

26   be tried in a single proceeding. Absolute identity of all events is unnecessary." *Mosley*, 497 F.2d at

27   1333. The second prong of Rule 20(b) is satisfied if "some question of law or fact common to all the

28

12

1   parties will arise in the action." *League to Save Lake Tahoe v. Tahoe Reg. Plan. Agcy.*, 558 F.2d 914

2   (9th Cir. 1977) (citing Wright & Miller, *Federal Practice and Procedure*: Civil § 1653).

3         After evaluating the Rule 20(a)(2) requirements, "a district court must examine whether

4   permissive joinder would 'comport with the principles of fundamental fairness' or would result in

5   prejudice to either side." *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (9th Cir. 2000)

6   (citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir.

7   1980)).

8         In deciding whether to allow joinder at a particular stage of the litigation, the joinder rules

9   are "to be construed liberally in order to promote trial convenience and to expedite the final

10   determination of disputes, thereby preventing multiple lawsuits." *Save Lake Tahoe v. Tahoe Reg'l*

11   *Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "Under the Rules, the impulse is toward

12   entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of

13   claims, parties and remedies is strongly encouraged." *United Mine Works of Am. v. Gibbs*, 383 U.S.

14   715, 724 (1966). The purpose of the joinder rules is, *inter alia*, to "avoid multiplicity of suits."

15   *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554 (N.D. Ill. 1964).

16       **2. Joinder is Proper at this Early Stage of the Litigation**

17         Joinder is proper at the early discovery stage of this litigation. First, Plaintiff has address this

18   Court's concerns raised in *Pacific Century*. Second, Plaintiff's allegations plainly satisfy the Rule

19   20(a)(2) requirements for joinder. Third, joinder at the early discovery stage of the litigation

20   promotes principles of fundamental fairness. Finally, severance at this stage of the litigation—where

21   the identities of the doe defendant(s) are unknown—would separate an essentially unitary problem.

22       **a. Plaintiff has exhaustively satisfied this Court's concerns raised in *Pacific Century*.**

23         In this Court's ruling in *Pacific Century*, this Court took issue with the plaintiff's *Ex Parte*

24   Application and attached Hansmeier Declaration because they left open the possibility that doe

25   defendant(s) could be infringing the plaintiff's copyrighted work in multiple swarms and with

26   multiple files and therefore never actually interact in the manner necessary for joinder. *Pacific*

27   *Century*, No. C 11-02533 DMR, ECF No. 7 at *5-6. Plaintiff in this case has addressed these

28

concerns. Plaintiff's Amended Complaint contains numerous references to the fact that Doe Defendant(s) all belonged to the same swarm and were infringing the same unique file. (ECF No. 6 ¶¶ 8-10, 12, 28-30, 34, 39-42, 44.) The Amended Complaint even explicitly references the fact that all Defendant(s) in this action were found in a single swarm and exchanged the same file. (Id. ¶ 9.) ("While Plaintiff's agents observed *multiple* swarms involved in reproducing and distributing [Plaintiff's Work], Plaintiff specifically chose to bring this action solely against Defendants who were engaged in the same *single* Swarm containing the unique File . . .") Plaintiff has exhaustively addressed this Court's concerns regarding the presence of multiple swarms.

**b.  Plaintiff's allegations plainly satisfy the Rule 20(a)(2) requirements for joinder.**

Plaintiff's allegations satisfy the Rule 20(a)(2) requirements for joinder. *MCGIP, LLC v. Does 1–18*, No. 11-1495, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011) (Chen, J.) (citing *Voltage Pictures, LLC v. Does 1–5,000*, No. 10-0873, 2011 WL 1807438, at *4 (D.D.C. May 12, 2011)) (finding comparable pleadings "proper" for permissive joinder at the early discovery stage of the litigation).

First, the Amended Complaint alleges that all Doe Defendant(s) were part of a common scheme. For example, the Amended Complaint asserts that "[i]n using the peer-to-peer BitTorrent file distribution method, each Doe Defendant participated in, aided in, attempted to aid in, or at least knew of the formation and operation of a common-plan conspiracy to unlawfully reproduce and distribute the Video by exchanging pieces of the *File containing the Video* in a *specific and unique torrent swarm* on BitTorrent." (Amend. Compl. ¶ 39; *see also id.* ¶ 9) (emphasis added). *See also Mosley*, 497 F.2d at 1333-34 (reversing district court's severance of plaintiffs where defendant was alleged to have engaged in a common scheme of discriminatory conduct). Second, the Amended Complaint alleges that the Doe Defendant(s) used the BitTorrent protocol to distribute Plaintiff's works amongst themselves—which by virtue of the nature of the BitTorrent protocol necessarily involves collaboration among the Does Defendant(s). (Amend. Compl. ¶¶ 1, 8-10, 29, 32, 39-44.) *See also, e.g., Patrick Collins, Inc. v. Does 1-2,590*, No. C 11-02766 MEJ, 2011 WL 3740487 *6 (N.D. Cal. Aug. 24, 2011) ("[T]he Court finds that Plaintiff has at least presented a reasonable basis

to argue that the BitTorrent protocol functions in such a way that peers in a single swarm downloading or uploading a piece of the same seed file may fall within the definition of "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a)(1)(A)). Finally, Plaintiff asserted a right to relief against the Doe Defendant(s) jointly and severally for the Doe Defendant(s)' active participation in a civil conspiracy and the associated infringement damage. (Amend. Compl. ¶¶ 38-45.) Such allegations have been held sufficient to sustain joinder while discovery of Doe Defendant(s)' identities is underway. *MCGIP, LLC*, 2011 WL 2181620, at *4 (Chen, J.) (holding such allegations were sufficient at the early stage of litigation and postponing further joinder discussion until movants were made party to the litigation); *Voltage Pictures*, 2011 WL 1807438, at *4 (same); *Call of the Wild Movie v. Does 1–1,062*, No. 10-455, 2011 WL 996786, at *4–5 (D.D.C. Mar. 22, 2011) (finding plaintiffs' allegations that the Doe defendant(s) used BitTorrent, BitTorrent "makes every downloader also an uploader," and any peer who has completed a download "is automatically a source for the subsequent peer" to be sufficient to make claims against defendant(s) "logically related"); *First Time Videos, LLC v. Does 1-500*, no. 10 C 5254, 2011 WL 3498227, at *11 (N.D. Ill. Aug. 9, 2011) (same); *Hard Drive Productions, Inc. v. John Does 1-44*, 11 C 2828 (N.D. Ill. Aug. 9, 2011) (Holderman, C.J.).

As to the second prong of 20(a)(2), this suit involves questions of law and fact that are common to all defendant(s). Plaintiff's Amended Complaint singles out several legal questions underlying the claims against each defendant. (Amend. Compl. ¶ 12.) Further, this suit involves common questions of fact. By way of example, the methods used "to investigate, uncover, and collect evidence about any infringing activity will be the same as to each Doe Defendant." *First Time Videos*, 2011 WL 3498227, at *2.

### c. Joinder at the early discovery stage of the litigation promotes principles of fundamental fairness.

Under the Federal Rules, "the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers*, 383 U.S. at 724. Joinder is strongly encouraged because it promotes judicial economy. It inherently allows parties to join, *inter*

*alia*, related parties and have common issues of law and fact decided for all of the parties in a single decision. The benefit of judicial economy gives way—even when the requirements of Rule 20 are met—when joinder violates principles of fundamental fairness. *Coleman*, 232 F.3d at 1296 (9th Cir. 2000) (internal citation omitted). At this stage of the litigation—where Plaintiff is simply seeking the identities of individuals associated with IP addresses associated with unlawful copyright infringement—joinder is not only consistent with principles of fundamental fairness, but actually promotes the same. *First Time Videos*, 2011 WL 3498227, at *11 ("[J]oinder at this stage is consistent with fairness to the parties and in the interest of convenience and judicial economy because joinder will secure the just, speedy, and inexpensive conclusion for both FTV and any future named defendant(s) … [Severance would] make it highly unlikely that FTV could protect its copyrights in a cost-effective manner.").

A pair of motions brought in a similar case provides a classic illustration of why joinder at this stage of the litigation promotes fundamental fairness. In that case, two motions were brought on behalf of two different IP addresses, but both motions and IP addresses actually belonged to the same individual. *Hard Drive Productions, Inc., v. Does 1-69*, C-11-03004, (N.D. Cal. Aug. 25, 2011), ECF Nos. 12-13. Even though those two motions were brought on behalf of two different IP addresses, both motions and IP addresses actually belonged to a single individual. *Id.* It would be unfair and inefficient to sever an identical claim brought against a single individual. Multiple IP addresses (and thus multiple alleged doe defendant(s)) are frequently associated with a single individual. This happens when an individual's modem is reset. Each time it is reset, the individual subscriber is assigned a different IP address. If, for instance, the individual is in the swarm containing the unique file with Plaintiff's video, and resets his Comcast modem, he will still remain in the same swarm with the same unique file, but he will simply appear with a new IP address. At this point in the litigation—i.e. before the requested discovery is granted—Plaintiff does not know which Doe Defendant(s) in this case have multiple IP addresses listed on Exhibit A of the Amended Complaint (ECF No. 6-1.)

By way of another example, in a case filed by Plaintiff's counsel in the Northern District of Illinois against 28 doe defendant(s), *each* IP address was, in fact, associated with the *same* individual. (Decl. of John Steele ¶ 4, Exhibit C to this Application.) Had the court there severed the case before the plaintiff had completed early discovery, Plaintiff would have unwittingly filed *28 separate* copyright infringement actions against the *same* anonymous individual. This would have entailed *28* separate filing fees, complaints, civil cover sheets, attorney appearance forms, corporate disclosure statements, motions for expedited discovery, memoranda of law in support thereof, declarations, proposed orders, motion hearings and subpoenas. The responding doe defendant would have received *28* separate ISP notification letters, would have had to file *28* separate motions to quash and answer *28* separate complaints—lest he be subject to a default judgment. Additionally, the actions could have been before nearly all of the judges in the Eastern Division of the Northern District of Illinois and would almost certainly have received some level of inconsistent treatment. No plausible argument can be made that severance would have been appropriate in this real world example. The same is true here.

Just as personal jurisdiction analysis is premature when the Court does not know a defendant's identity—and thus does not know whose contacts to evaluate—so too is it premature at the identification stage of litigation to sever unidentified parties from litigation. Without knowing whom the parties are (i.e., whether a given individual is associated with some or all of the IP addresses in a complaint), a court cannot know whether it is severing identical claims against the same individual. Moreover, the unfortunate individual who is severed multiple times from the same action as a result of premature severance would face multiple claims, multiple lawsuits and a much higher overall litigation burden than would have occurred had a court deferred the severance question merely until the plaintiff received identifying information from the ISP(s).

Judge Howell of the United States District Court for the District of Columbia presciently anticipated the multiple IP address-to-individual scenario outlined above. Judge Howell reasoned that severance would be especially contrary to the interests of any individuals who have been named as Doe Defendant(s) multiple times in the same suit for multiple observed instances of infringing

activity, a possibility that is a consequence of the dynamic reassignment of many consumer IP addresses:

> [S]ome IP addresses may relate to the same person, who is engaged in the allegedly infringing activity claimed by plaintiffs. Severance of the putative defendant(s) associated with different IP addresses may subject the same [ISP] customer to multiple suits for different instances of allegedly infringing activity and, thus, would not be in the interests of the putative defendant(s).

*Call of the Wild Movie*, 2011 WL 996786, at *6.

It is worth noting that small business copyright holders, such as Plaintiff, would have literally no realistic means of economically enforcing their copyrights against digital infringement if misjoinder decisions forced them into a judicially-imposed game of Russian Roulette (i.e. being required to pay separate filing fees and hoping that the IP addresses pursued are not associated with the same underlying individual). *First Time Videos, LLC v. Does 1-500*, No. 10-cv-6254, at *20 (N.D. Ill. Aug. 9, 2011) (Castillo, J.), ECF No. 151. (Finding that the plaintiff would be prejudiced if severance were granted because the expense of litigation would be too great a hindrance on its ability to protect its legal rights). It is also worth noting that settling infringers are much more likely to be able to escape liability with a modest settlement when Plaintiff's initial litigation costs (due to multiple filing fees and attorney time) are isolated to a single case because Plaintiff, at that point, is not only looking to recoup costs, but also to go to trial head up against the remaining doe defendant.

Finally, Plaintiff observes that Rule 21 safeguards the Court from an unreasonable burden on its own docket. Rule 21 vests the Court with the discretion to sever this action at any time. Certain of the Court's esteemed colleagues were concerned about the litigation logistics that would result from multiple parties defending a copyright action at once. These concerns might have merit at a later stage of the litigation, but the power of *sua sponte* severance makes predicting the future unnecessary. The Court need only be concerned with the immediate-term because it retains the authority to immediately sever an action, if necessary.

All of the foregoing considerations reveal the wisdom and reasoning behind why the overwhelming majority of federal courts elect to defer the joinder question until the identities of the

individuals associated with the IP addresses have been ascertained. At this point in the litigation—

i.e. before the requested discovery is granted—Plaintiff does not know which Doe Defendant(s) in

this case have multiple IP addresses listed on Exhibit A of the Amended Complaint (ECF No. 6-1.)

Should the Court decide to sever the case at this point, it would be prejudicing, and putting a heavy

burden upon, Plaintiff, Doe Defendant(s), and the Court system as a whole.

**d. Severance at this stage of the litigation would separate an essentially unitary problem.**

While joinder rules are ultimately discretionary in nature, this discretion is not without limit.

According to the Second Circuit, "an attempt to separate an *essentially unitary problem* is an *abuse*

*of discretion.*" *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974)

(emphasis added); *see also Leslie*, 2010 WL 2991038 at *4 (citing the abuse of discretion standard

set forth in *Spencer, White & Prentis, Inc.*); *Zaldana v. KB Home, et al.*, C 08-3399, 2010 WL

4313777 at *1 (N.D. Cal. Oct. 26, 2010) (Chesney, J.). Should the Court choose to sever this case,

its *sua sponte* actions could have repercussions. Considering it is likely that the same individual had

multiple IP addresses involved in the alleged infringement in this case, the Court would be severing

an identical claim against an identical individual. As the Court understands, the Court would then be

severing a case with the purest imaginable form of a "unitary problem." Should the Court choose

this course, such a decision could end in reversible error of an otherwise discretionary power.

At this juncture, the proper course would be to wait to rule on the issue of joinder until

Plaintiff has Doe Defendant(s)' identities, and can further, if necessary, discover information

physically linking unlawfully downloaded files containing Plaintiff's copyrighted Works on Doe

Defendant(s)' computers. Plaintiff's agents have the technology necessary to identify whether files

on one computer match those of another, thereby can prove that those individuals were passing back

and forth bits and pieces of files to each other through the same swarm via BitTorrent. At this early

stage, however, there is no way to identify that information linkage when Plaintiff has not even been

granted the ability to proceed with its initial discovery of Doe Defendant(s)' identities.

### 3. Courts that have Found Misjoinder in Similar Cases Misunderstood the BitTorrent Protocol

Certain courts in California have found misjoinder in cases similar to the present one. In many of those decisions, however, the courts may not have considered a few key characteristics of the BitTorrent protocol. A complete understanding of the issues raised by other courts should help this Court under why joinder is appropriate at the early discovery stage of a BitTorrent infringement case.

A common reason given by courts for finding misjoinder is the assumption that the doe defendants were not in the same swarm, and, therefore, did not truly interact with each other in the same transaction or occurrence or set of transactions or occurrences. *E.g., OpenMind Solutions, Inc. v. Does 1039*, C 11-3311, at *8-9 (N.D. Cal. Aug. 23, 2011) ECF No. 11; *Hard Drive Productions, Inc. v. Does 1-188*, C-11-01566, at *17 (N.D. Cal. Aug. 23, 2011) ECF No. 26; *Pacific Century International, LTD. v. Does 1-101*, C-11-2533, at *6 (N.D. Cal. July 8, 2011) ECF No. 7; *Hard Drive Productions, Inc. v. Does 1-42*, C-11-01956, at *2 (N.D. Cal. July 14, 2011) ECF No. 14.[2] This is factually untrue. To put the record straight, while it is true that there were multiple swarms that distributed Plaintiff's copyrighted content, this lawsuit only identifies Doe Defendant infringers in *one* particular swarm. (Hansmeier Decl. ¶ 18) (explaining the process of finding and identifying Doe Defendant(s) in a single swarm); (Amend. Compl. ¶ 9. ) (describing the infringing conduct of Doe Defendant(s) in a single swarm).

Another proffered reason for finding misjoinder is the assumption that the doe defendants were not sharing the exact same file within the swarm. *E.g., OpenMind Solutions, Inc.*, C 11-3311, at *9; *Pacific Century International, LTD.*, C-11-2533, at *6; *Hard Drive Productions, Inc. v. Does 1-42,* C-11-01956, at *2. This is also factually untrue. By definition, a single swarm will have only one file in it. (Hansmeier Decl. ¶ 19) (explaining that a single "torrent" file is available in a single swarm and this can be identified by the Distributed Hash Tables). All Doe Defendant(s) in this case

---

[2] The court in *Hard Drive Productions, Inc. v. Does 1-42* later determined that joinder of the parties was appropriate and granted *ex parte* discovery without severing any parties from the case. (ECF No. 20.)

PLAINTIFF'S *EX PARTE* APPLICATION TO TAKE EXPEDITED DISCOVERY          No. C-11-03826 DMR

exchanged the same exact file while in the same exact swarm and are therefore participating in the same transaction or occurrence.

Other common justifications for finding misjoinder, include the assertions that the doe defendants were not in the swarm at the exact same date and time, and that there is no evidence that any particular doe defendant interacted with any other particular doe defendant. *E.g., Boy Racer, Inc. v. Does 1-60*, C 11-01738, at *5 (N.D. Cal. Aug. 19, 2011) ECF No. 24; *OpenMind Solutions, Inc.*, C 11-3311, at *8[3]; *Hard Drive Productions, Inc. v. Does 1-188*, C-11-01566, at *17, 18; *MCGIP, LLC v. Does 1-149*, C 11-02331, at *5 (N.D. Cal. Aug. 15, 2011) ECF No. 13. These claims lack merit once the nature of the BitTorrent protocol is considered. The BitTorrent protocol dictates that each doe defendant (a peer) download a random portion of the file while in the swarm. (Hansmeier Decl. ¶ 11.) After a peer has downloaded its part of the file, it then shares that piece and subsequent pieces with other peers in the swarm. (*Id.*) The effect of this protocol is that each peer is both a downloader and uploader of an illegally-transferred file. (*Id.*) Even after a doe defendant has physically disconnected from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other doe defendant(s) remaining in the swarm, so his influence and effect on the swarm will be felt long after he has left the swarm. (*Id.* ¶ 12.) As explained above, a transaction or occurrence depends more on the logical relationship between the actions than on the immediateness of their connection. *New York Cotton Exchange*, 270 U.S. at 610. Further, the date and times for each individual IP address in Exhibit A of the Amended Complaint are the dates and

---

[3] While Magistrate Judge Maria-Elena James originally had questions on how individuals entering the same swarm at different times could still be connected for joinder purposes in *Openmind Solutions*, she later appeared to answer her own questions when she explained why "protracted" time "periods" in BitTorrent swarms did not present an obstacle for finding joinder:

> Reviewing Exhibit A to Plaintiff's Complaint, Defendant(s)' alleged infringing activity occurred over a period of over one year, from May 19, 2010 through June 2, 2011. *See* Compl. Ex. A. While this period might seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remains the same within that swarm…. Each putative Defendant is a possible source for Plaintiff's copyrighted work, and may be responsible for distributing the work to the other putative Defendant(s), who are also using the same file-sharing protocol to copy the identical copyrighted material…. While Doe Defendant(s) may be able to rebut these allegations later, the plaintiffs have sufficiently alleged that their claims against the defendant(s) potentially stem from the same transaction or occurrence, and are logically related. *Patrick Collins, Inc. v. Does 1-2,590*, No. C 11-02766 MEJ, 2011 WL 3740487 *6 (N.D. Cal. Aug. 24, 2011.)

times that Plaintiff observed the Doe Defendant in the swarm and are not the only time in which that Doe Defendant participated in that swarm. Plaintiff's observation is simply a snapshot of the entire interaction among the Doe Defendant(s). In fact, individuals can remain within a single swarm for months at a time. *See* discussion *supra* Part VI(2)(c). Peers associated with a BitTorrent swarm have continual and long lasting effects on that swarm whether they are still connected to the swarm or not. In other words, just passing bits and pieces of the file onto other members of the swarms serves to maintain the swarm, regardless how long the Doe Defendant is actually engaging in the swarm activity. Bits and pieces that are passed through that Doe Defendant to others in the swarm forever connect him or her to the swarm, regardless if he or she disconnects from the swarm, deletes the file, and/or wishes he or she had never been involved in the infringing activity in the first place.

A final argument raised by courts for misjoinder is that joinder would be unfair to Doe Defendant(s) in the case: the case would be unmanageable, there would be too many different defenses and issues, and it would be too expensive. *E.g., Hard Drive Productions, Inc. v. Does 1-188*, C-11-01566, at *19; *MCGIP, LLC*, C 11-02331, at *5-6. These arguments may have merit in the future but to grant misjoinder now would have the opposite effect of promoting fairness. This is especially true since it is very common for at least some of the Doe Defendant(s) named in the case to be the same individual. *See* discussion *supra* Part VI(2)(b). If this Court were to sever parties from the case at this point in the litigation, it would risk severing identical claims against the same individual. The court can sever parties from a case because of misjoinder problems on its own accord, any time it wants, and justice would be better served by waiting until the Court has a more complete understanding of the identities of all parties involved.

## VII.   CONCLUSION

Plaintiff applies for leave to, upon Court authorization, immediately serve FRCP 45 subpoenas to compel listed ISPs in the Amended Complaint, or a further discovered relevant subsidiary, to within fifteen (15) days turnover personal identification information it currently possesses, and may identify in the future during the course of this litigation, for each IP address

linked to each individual Doe Defendant described in Attachment A to the Amended Complaint (ECF No. 6-1), including each Doe Defendant(s)':

- True Name;

- Address;

- Telephone Number;

- E-mail Address; and

- Media Access Control Address.

Plaintiff will only use this information to prosecute the claims made in its Amended Complaint. Further, Plaintiff understands that the subpoenaed ISPs will be able to notify their subscribers that this information is being sought, and each Doe Defendant will have the opportunity to raise any objections before this Court prior to the return date of the subpoena. Thus, to the extent that any Defendant wishes to object, he or she may do so.

Put plainly, joinder is a red herring at this stage of the litigation. All factors discussed weigh heavily in favor of compelling disclosure of the Doe Defendant(s)' identifying information. Without disclosure of the Doe Defendant(s)' identities, Plaintiff's litigation cannot proceed. To deny this motion would be to give those committing this online, peer-to-peer piracy *carte blanche* authority to repeat their infringing conduct. Permitting these acts would essentially render the federal copyright laws inapplicable to illegal Internet interconnected "sharing." Plaintiff prays that the Court recognize this, and grant this Application by entering the later filed proposed order, or the Court's own order. Respectfully Submitted,

STEELE HANSMEIER, PLLC,

**DATED: September 29, 2011**

By:        /s/  Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
Steele Hansmeier PLLC.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*