Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> JOHN DOE AND SOUKHA ) <br> PHIMPASOUK, ) <br> Defendants. ) <br> ) <br> ) | **No. 4:11-cv-03826 DMR** <br><br> Judge: Hon. Mag. Donna M. Ryu <br><br> **AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Hard Drive Productions, Inc. ("Plaintiff"), through its undersigned counsel, hereby files this Complaint requesting damages and injunctive relief, and alleges as follows:

## NATURE OF THE CASE

1.  Plaintiff files this action for copyright infringement under the United States Copyright Act and related contributory infringement and negligence claims under the common law to combat the willful and intentional infringement of its creative works. Unidentified Defendant John Doe ("Defendant Doe"), whose name[1] Plaintiff expects to ascertain during discovery, knowingly and illegally reproduced and distributed Plaintiff's copyrighted Video by acting in concert with other indeividuals over the Internet via the BitTorrent file sharing protocol and, upon information and belief, continues to do the same. In using BitTorrent, Defendant Doe's infringing actions furthered the efforts of numerous others in infringing on Plaintiff's copyrighted works. The result:

---
[1] At this stage of the litigation Plaintiff does not know if Defendant Doe is the same individual as Phimpasouk ("Defendant Phimpasouk")

exponential viral infringment. Plaintiff seeks a permanent injunction, statutory or actual damages, award of costs and attorney's fees, and other relief to curb this behavior.

## THE PARTIES

2. Plaintiff Hard Drive Productions, Inc. is a corporation organized and existing under the laws of the State of Arizona. Plaintiff invests significant capital in producing the content associated with its flagship website, Amateur Allure, and has produced substantial numbers of videos and photographs. Plaintiff is a holder of rights to various copyrighted works, and is the exclusive holder of the relevant rights with respect to the copyrighted creative work at issue in this Complaint.

3. The copyrighted work at issue in this complaint is one of Plaintiff's adult entertainment videos, "Amateur Allure – Natalia" (the "Video").

4. Defendant Phimpasouk is an individual who, on information and belief, is over the age of 18, and was the account holder of Internet Protocol ("IP") address 108.0.175.48 at the time of the alleged infringing activity. An IP address is a number assigned to devices, such as computers, that are connected to the Internet. In the course of monitoring Internet-based infringement of its copyrighted content, Plaintiff's agents observed unlawful reproduction and distribution occurring over IP address 108.0.175.48 via the BitTorrent file transfer protocol.

5. Defendant Doe's actual name is unknown to Plaintiff.

6. Defendant Doe used IP address 108.0.175.48 to illegally download, republish and distribute copies of Plaintiff's copyrighted Video through a unique BitTorrent swarm.

7. On information and belief, Defendant Phimpasouk allowed Defendant Doe to use Defendant Phimpasouk's Internet connection to illegally download, republish and distribute copies of Plaintiff's copyrighted Video.

8. On information and belief the Defendants effected, were participants in, or in some way abetted the illegal acts alleged herein, proximately causing the damages alleged. As a result, Plaintiff believes that Defendants caused damage to Plaintiff, are liable to Plaintiff for such damage, and Plaintiff seeks compensation for such.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiff's copyright infringement claim under 17 U.S.C. §§ 101, *et seq.*, (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights). This Court has supplemental jurisdiction over Plaintiff's contributory infringement and negligence claims under 28 U.S.C. § 1367(a) because they is so related to Plaintiff's copyright infringement claim, which is within this Court's original jurisdiction, that the claims form part of the same case and controversy under Article III of the United States Constitution.

10. This Court has personal jurisdiction because, upon information and belief, Defendants either reside in or committed copyright infringement in the State of California. Plaintiff used geolocation technology to trace the IP address of the Doe Defendant to a point of origin within the State of California. Geolocation is a method for ascertaining the likely geographic region associated with a given IP address at a given date and time. Although not a litmus test for personal jurisdiction, the use of geolocation gives Plaintiff good cause for asserting that personal jurisdiction is proper over the Defendants.

11. Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because both (or either) Defendant resides in this District, may be found in this District, or a substantial part of the events giving rise to the claims in this action occurred within this District.

# BACKGROUND

12. BitTorrent is a modern file sharing method ("protocol") used for distributing data via the Internet.

13. Traditional file transfer protocols involve a central server, which distributes data directly to individual users. This method is prone to collapse when large numbers of users request data from the central server, in which case the server can become overburdened and the rate of data transmission can slow considerably or cease altogether. In addition, the reliability of access to the data stored on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

14. Standard P2P protocols involve a one-to-one transfer of whole files between a single uploader and single downloader. Although standard P2P protocols solve some of the issues associated with traditional file transfer protocols, these protocols still suffer from such issues as scalability. For example, when a popular file is released (e.g. an illegal copy of the latest blockbuster movie) the initial source of the file performs a one-to-one whole file transfer to a third party, who then performs similar transfers. The one-to-one whole file transfer method can significantly delay the spread of a file across the world because the initial spread is so limited.

15. In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves. Further, the BitTorrent protocol involves breaking a single large file into many small pieces, which can be transferred much more quickly than a single large file and, in turn, redistributed much more quickly than a single large file. Moreover, each peer can download missing pieces of the file from multiple sources—often simultaneously—which causes transfers to be fast and reliable. After downloading a piece, a peer

automatically becomes a source for the piece. This distribution method contrasts sharply with a one-to-one whole file transfer method.

16. In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The group of peers involved in downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker. A computer program that implements the BitTorrent protocol is called a BitTorrent client. Each swarm is unique to a particular file.

17. The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

18. The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast identifying information (i.e. an IP address) before it can receive data. Nevertheless, the actual names of peers in a swarm are unknown, as the users are allowed to download and distribute under the cover of their IP addresses.

19. The BitTorrent protocol is an extremely popular method for transferring data. The size of swarms for popular files can reach into the tens of thousands of unique peers. A swarm will commonly have peers from many, if not every, state in the United States and several countries

around the world. And every peer in the swarm participates in distributing the same exact file to dozens, hundreds, or even thousands of other peers.

20. The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing, and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

21. Efforts at combating BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy measures. This lawsuit is Plaintiff's only practical means of combating BitTorrent-based infringement of the Video.

## ALLEGATIONS COMMON TO ALL COUNTS

22. Plaintiff is the exclusive rights holder with respect to BitTorrent-based reproduction and distribution of the Video.

23. The Video is currently registered in the United States Copyright Office (Copyright No. PA0001783851). (*See* Exhibit A to Complaint.)

24. The torrent file used to access the copyrighted material was named in a manner that would have provided an ordinary individual with notice that the Video was protected by the copyright laws of the United States.

25. Plaintiff employs proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of the BitTorrent-based swarm involved in distributing the Video.

This software is effective in capturing data about the activity of peers in a swarm and their infringing conduct.

26. Defendant Doe, using IP address 108.0.175.48, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Video, purposefully loaded that torrent file into his BitTorrent client—in this case, µTorrent 2.2.1—entered a BitTorrent swarm particular to Plaintiff's Video, and reproduced and distributed the Video to numerous third parties.

27. Plaintiff's investigators detected this illegal activity on June 3, 2011 at 5:52:10 p.m. However, this is a simply a snapshot observation of when the IP address was *observed* in the BitTorrent swarm; the conduct took itself place before and after this date and time.

28. Defendant Doe was part of a group of BitTorrent users or peer in a single swarm—a process generally described above—whose computers were collectively interconnected for the sharing of a particular unique file. The particular file a BitTorrent swarm is associated with has a unique file "hash"—i.e. a unique file identifier generated by an algorithm. The unique hash value in this case is identified as 071D728FC880FFF817516F3B630A9934AF727EF6 (hereinafter "Hash Tag."), and common to all of the participants in the swarm.

## COUNT I – COPYRIGHT INFRINGEMENT – REPRODUCTION
## (17 U.S.C. § 106(1) - Against Defendant Doe)

29. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

30. Plaintiff is the copyright owner of the Video.

31. Defendant Doe, without authorization, unlawfully obtained a copy of the Video.

32. Normally, the Video is offered by Plaintiff for purchase. Defendant Doe, however, did not purchase the Video and/or obtain the Video legally.

33. Defendant Doe used IP address 108.0.175.48 to access the Video on the Internet, and download the unique file containing the Video onto a hard drive through the unique swarm associated with the unique Hash Tag using the BitTorrent protocol.

34. Defendant Doe's actions constituted copyright infringment of Plaintiff's Video.

35. Defendant Doe knew or had constructive knowledge that his acts constituted copyright infringement of Plaintiff's Video.

36. Defendant Doe's conduct was willful within the meaning of the Copyright Act: intentional, and with indifference to the Plaintiff's rights.

37. Defendant Doe's conduct infringed upon Plaintiff's exclusive rights of reproduction of the Video that are protected under the Copyright Act.

38. Plaintiff has been damaged by Defendant Doe's conduct, including but not limited to economic and reputation losses. Plaintiff continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the Defendant Doe's conduct.

39. As Defendant Doe's infringement was intentional and willful, the Plaintiff is entitled to an award of actual damages and/or statutory damages (pursuant to 17 U.S.C. § 504(c)) at its own election, exemplary damages, attorneys' fees (pursuant to 17 U.S.C. § 505), injunctive relief (pursuant to 17 U.S.C. §§ 502, 503) and the costs of the suit.

## COUNT II – COPYRIGHT INFRINGEMENT – DISTRIBUTION
### (17 U.S.C. § 106(3) – Against Defendant Doe)

40. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

41. Plaintiff holds the exclusive rights under the Copyright Act to distribute the Video.

42. Defendant Doe has used, and continues to use, the BitTorrent file transfer protocol to unlawfully distribute the Video to other indiviudals over the Internet by publishing the Video to hundreds of thousands of BitTorrent users from a computer owned or controlled by Defendant Doe, which, in essence, served as a distribution server for the Video. In doing so, Defendant Doe violated Plaitniff's exclusive rights to distribute the Video.

43. Defendant Doe was not given any permission to conduct such reproduction, and Plaintiff never consented to such.

44. Defendant Doe's actions constitute infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act.

45. Defendant Doe knew or had constructive knowledge that his acts constituted copyright infringement of Plaintiff's Video.

46. Defendant Doe's conduct was willful within the meaning of the Copyright Act: intentional, and with indifference to the Plaintiff's rights.

47. Plaintiff has been damaged by Defendant Doe's conduct, including but not limited to economic and reputation losses. Plaintiff continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the Defendant Doe's conduct.

48. As Defendant Doe's infringement was intentional and willful, the Plaintiff is entitled to an award of actual damages and/or statutory damages (pursuant to 17 U.S.C. § 504(c)) at its own election, exemplary damages, attorneys' fees (pursuant to 17 U.S.C. § 505), injunctive relief (pursuant to 17 U.S.C. §§ 502, 503) and the costs of the suit.

///

///

## COUNT III – CONTRIBUTORY INFRINGEMENT

### (Against Defendant Doe)

49. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

50. When users in this unique swarm all possess the same infringing work with the same exact hash value, it is because each infringer possesses an exact digital copy, containing the exact bits and pieces unique to that specific file of Plaintiff's original copyrighted work. They only way this happens in a BitTorrent swarm is through the sharing of these bits and pieces of each same unique file, with the same unique hash value, between the users in the swarm. In essence, although hundreds of users may be uploading the copyrighted work, a single user will receive only the exact parts of a singular upload through that exact swarm, not a compilation of available pieces from various uploads.

51. Defendant Doe published the Hash Tag to the BitTorrent network.

52. Defendant Doe downloaded, uploaded and distributed the Video to other BitTorrent users through use of the hash-specified protocol in the unique swarm.

53. As each of the thousands of people who illegally downloaded the movie accessed this illegal publication, they derived portions of their illegal replication of the file from multiple persons, including, but not limited to, Defendant Doe.

54. Defendant Doe knew of the infringement, was conscious of his own infringement, and Defendant Doe was fully concsious that his actions resulted in multiple other persons derivatively downloaded the file containing Plaintiff's Video.

55. The infringement by the other BitTorrent users could not have occurred without Defendant Doe's participation in uploading Plaintiff's copyrighted works. As such, Defendant

Doe's participation in the infringing activities of others is substantial and contributed, for profit, to the infringing activity of thousands of other peers over the Internet across the world.

56. Defendant Doe profited from this contributory infringement by way of being granted access to a greater liberty to a greater library of other infringing works, some of which belonged to Plaintiff and some of which belonged to other copyright owners.

## COUNT IV – NEGLIGENCE
### (Against Defendant Phimpasouk)

57. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

58. Defendant Phimpasouk accessed, or controlled access to, the Internet connection used in performing the unauthorized copying and sharing of Plaintiff's Video, proximately causing financial harm to Plaintiff.

59. Defendant Phimpasouk had a duty to secure his Internet connection. Defendant Defendant Phimpasouk breached that duty by failing to secure his Internet connection.

60. Reasonable Internet users take steps to secure their Internet access accounts preventing the use of such accounts for an illegal purpose. Defendant Defendant Phimpasouk's failure to secure his Internet access account, thereby allowing for its illegal use, constitutes a breach of the ordinary care that a reasonable Internet account holder would do under like circumstances.

61. In the alternative, Defendant Phimpasouk secured his connection, but permitted Defendant Doe to use his Internet connection to infringe on Plaintiff's Video. Defendant Phimpasouk knew, or should have known, that Defendant Doe used Defendant Defendant Phimpasouk's Internet connection for the aforementioned illegal activities. Defendant Defendant Phimpasouk declined to monitor the unidentified Defendant Doe use of his computer Internet connection for purposes of infringement, demonstrating further negligence.

62. In the alternative, Defendant Defendant Phimpasouk knew of, and allowed for, Defendant Doe to use his Internet connection for illegal purposes and thus was complicit in Doe Defendant's actions.

63. Upon information and belief, Plaintiff alleges that Defendant Defendant Phimpasouk's failure to secure Defendant Defendant Phimpasouk's Internet access account directly allowed for the copying and sharing of Plaintiff's Video over the BitTorrent protocol through Defendant Defendant Phimpasouk's Internet connection, and interfered with Plaintiff's exclusive rights in the copyrighted work.

64. Upon information and belief, Plaintiff alleges that Defendant Phimpasouk knew, or should have known of, the unidentified third party's infringing actions, and, despite this, Defendant Phimpasouk directly, or indirectly, allowed for the copying and sharing of Plaintiff's Video over the BitTorrent protocol through Defendant Phimpasouk's Internet connection, and interfered with Plaintiff's exclusive rights in the copyrighted Video.

65. By virtue of his unsecured access, Defendant Phimpasouk negligently allowed the use of his Internet access account to perform the above-described copying and sharing of Plaintiff's copyrighted Video.

66. Had Defendant taken reasonable care in securing access to this Internet connection, or monitoring the unidentified third-party individual's use of his Internet connection, such infringements as those described above would not have occurred by the use of Defendant Defendant Phimpasouk's Internet access account.

67. Defendant Defendant Phimpasouk's negligent actions allow others to unlawfully copy and share Plaintiff's copyrighted Video, proximately causing financial harm to Plaintiff and unlawfully interfering with Plaintiff's exclusive rights in the Video.

# JURY DEMAND

68. Plaintiff hereby demands a jury trial in this case.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests Judgment and relief as follows:

1) Judgment against Doe Defendant that he has: a) willfully infringed Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by Doe Defendant's acts and conduct set forth in this Complaint;

2) Judgment in favor of the Plaintiff against Doe Defendant for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, justifying an award of $150,000 per infringement, in a total amount to be ascertained at trial;

3) Order of impoundment under 17 U.S.C. §§ 503 & 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in Doe Defendant's possession or under his control;

4) On Count III, an order that Doe Defendant is liable to the Plaintiff in the full amount of Judgment on the basis of a common law claim for contributory infringement of copyright; for an award of compensatory damages in favor of the Plaintiff and against Doe Defendant in an amount to be determined at trial;

5) On Count IV, an order that Defendant Phimpasouk is jointly and severally liable to the Plaintiff in the full amount of Judgment on the basis of Defendant Phimpasouk's negligence in allowing an unidentified third party access his Internet account and, through it, violate Plaintiff's copyrighted works; for an award of compensatory damages in favor of the Plaintiff and against Defendant Phimpasouk, jointly and severally, in an amount to be determined at trial;

6) Judgment in favor of Plaintiff against the Defendants awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

7) Judgment in favor of the Plaintiff against Defendants, awarding Plaintiff declaratory and injunctive or other equitable relief as may be just and warranted under the circumstances.

Respectfully Submitted,

PRENDA LAW INC.

**DATED: May 10, 2012**

By: /s/ Brett L. Gibbs

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by FRCP 38(a).

By: _____/s/ Brett L. Gibbs_____

Brett L. Gibbs, Esq. (SBN 251000)

*Attorney for Plaintiff*