Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JOHN DOE AND SOUKHA )<br>PHIMPASOUK, )<br>)<br>Defendant(s). )<br>)<br>_____ ) | **No. 4:11-cv-03826 DMR**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO SET ASIDE ENTRY OF DEFAULT** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO SET ASIDE ENTRY OF DEFAULT**

Defendant Soukha Phimpasouk filed, through attorney Nicholas Ranallo, a motion to set aside entry of default. (ECF No. 38.) Defendant Phimpasouk requests that the Court set aside the entry of default because he has established good cause to do so. (*Id.*) In support of his request, Defendant Phimpasouk argues that he was "confused" as to what was happening in regards to this lawsuit and only on brink of default judgment being entered against him did he decide to contact an attorney. (*Id.* at 3-4.) This is not sufficient to establish good cause and to set aside an entry of default. For this reason, and the reasons set forth below, the Court should deny Defendant Phimpasouk's motion to set aside entry of default.

**BACKGROUND**

Plaintiff Hard Drive Productions, Inc. is the exclusive owner of the copyrighted motion picture "Amateur Allure – Natalia." (ECF No. 1 ¶ 7.) Plaintiff initially filed this action against 130 individuals for copyright infringement and related civil conspiracy for illegally downloading and

1  distributing the "Amateur Allure – Natalia" movie through the BitTorrent protocol. (ECF No. 1.)
2  When the suit was filed, Plaintiff did not know the names of the alleged infringers but had identified
3  the Internet Protocol ("IP") addresses associated with the infringement. (*Id.* ¶ 7.) In order to ascertain
4  the identities of the unknown infringers, Plaintiff sought leave to issue subpoenas to the Internet
5  Service Providers ("ISPs") who provided Internet service to the identified IP addresses. (ECF No. 7.)
6  The Court granted Plaintiff's request for one of the unknown infringers, but severed the remaining
7  129 individuals from the action. (ECF No. 13.)

8  Plaintiff issued a subpoena to the ISP who provided Internet service to the remaining IP
9  address. After the ISP provided notice to its subscriber, the ISP identified Soukha Phimpasouk as the
10 individual associated the remaining infringing IP address. Plaintiff amended its complaint on May
11 10, 2012 to include allegations of contributory infringement and negligence. (ECF No. 27.) Plaintiff
12 alleged that Defendant Phimpasouk failed to secure his Internet connection and knowingly allowing
13 the infringement to take place over his IP address. (*Id.*)

14 A summons was issued to Defendant Phimpasouk on May 16, 2012 at the address provided
15 by his ISP, informing him of this lawsuit and explaining that if he failed to respond with an answer
16 or motion within 21 days, judgment by default will be entered against him. (ECF No. 28.) Plaintiff
17 further served Defendant Phimpasouk with the summons and amended complaint through personal
18 service on May 22, 2012 and through service by first class mail on May 23, 2012. (ECF No. 31.)
19 Finally, Plaintiff once again served Defendant Phimpasouk by first class mail on July 12, 2012.
20 (ECF 36.). In addition, Plaintiff's counsel made numerous additional attempts to contact Defendant
21 Phimpasouk via telephone and U.S. mail in order to inform him of this litigation, to make sure he did
22 not delete or destroy anything relevant to this matter, and to participate in a joint case management
23 conference statement. (*See* ECF No. 29 at 1 n 1; 29-1 ¶ 4).

24 By June 13, 2012, Defendant Phimpasouk had not responded, either through an answer or a
25 motion, to Plaintiff's amended complaint, so Plaintiff filed a request for the Clerk of Court to enter
26 default against Defendant Phimpasouk on the ground that he failed to appear or otherwise respond to

Plaintiff's amended complaint within the time prescribed by the FRCP Rule 12(a). (ECF No. 32.) The Clerk of Court entered default as to Defendant Phimpasouk on June 14, 2012. (ECF No. 33.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 states that "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). To determine "good cause," a court must consider three factors: (1) whether the defendant's culpable conduct led to the entry of default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the entry of default would prejudice the plaintiff. *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-6 (9th Cir. 2004). The party moving to set aside the entry of default has the burden of showing that these factors favor setting aside the default. *Id.* at 926.

## ARGUMENT

Defendant Phimpasouk has failed to meet his burden for establishing "good cause" for setting aside the entry of default against him. Defendant Phimpasouk's culpable conduct led to the entry of default. Defendant Phimpasouk has not set forth a meritorious defense. Setting aside the entry of default would result in great prejudice to Plaintiff. Defendant Phimpasouk was properly served. For these reasons the Court should deny Defendant Phimpasouk's motion for entry of default.

### I. Defendant Phimpasouk's Culpable Conduct Led to the Entry of Default

Defendant Phimpasouk culpable conduct led to the entry of default because he simply ignored Plaintiff's multiple attempts to inform him of this litigation. Defendant Phimpasouk argues that Plaintiff's personal service of May 22, 2012 was inadequate because it was served on his father who is not a resident of his home. (ECF No. 38 at 3.) The certificate of service indicates that Inta Phimpasouk is the "FATHER & CO-OCCUPANT" of Defendant Phimpasouk's residence. (ECF No. 31 at 1.) While Defendant Phimpasouk now explains that this is inaccurate, there is no factual basis for his explanation. Defendant Phimpasouk does not dispute that he received the documents served upon him but only argues that he "was unaware of the significance of the documents given to his father." (ECF No. 38 at 5.) Ignorance of the legal documents does not defeat the fact that he was

made aware of the litigation. Further, Defendant Phimpasouk only disputes the personal service upon him on May 22, 2012. (ECF No. 38.) He fails to address the fact that the summons was issued on him on May 16 (ECF No. 28), and that he was served twice by first class mail on May 23, 2012 (ECF No. 31) and July 12, 2012 (ECF No. 36). Finally, Plaintiff's counsel made numerous additional attempts to contact Defendant Phimpasouk via telephone and U.S. mail in order to inform him of this litigation, (ECF No. 29 at 1 n 1; 29-1 ¶ 4). Defendant Phimpasouk argues that one of the messages for him left him "confused," but once again acknowledges that he was made aware of this litigation. (ECF No. 38 at 4-5.)

Defendant Phimpasouk simply ignored all invitations by this Court and by Plaintiff to participate in this litigation until just before default judgment was about to be entered against him. Defendant Phimpasouk is not free to participate in federal litigation only when it is convenient for him. Defendant Phimpasouk's actions have caused months of delay for both Plaintiff and this Court. Indeed, due to the fleeting nature of electronically stored data, much of the information Plaintiff requires to litigate its case against Defendant Phimpasouk has likely been destroyed as a result of the delay. Defendant Phimpasouk's decision to ignore this Court and Plaintiff indicates that he acted in bad faith, and, as a result, has taken advantage of Plaintiff, interfered with judicial decision making and manipulated the legal process. *U.S. v. Signed Personal Check No. 730 of Yurban Mesle,* 615 F.3d 1085, 1093 (9th Cir. 2010). Defendant Phimpasouk's culpable conduct led to the entry of default.

II. **Defendant Phimpasouk Has Not Set Forth a Meritorious Defense**

Defendant Phimpasouk argues that he has a meritorious defense and advances three arguments in support of this claim. (ECF No. 38 at 6-10.) Defendant Phimpasouk argues that (1) Plaintiff's cause of action is preempted; (2) Defendant is entitled to CDA immunity; and (3) Defendant lacks a duty to protect Plaintiff. (*Id.*) None of the defenses are applicable here, however, and Defendant Phimpasouk has failed to set forth a meritorious defense. Plaintiff addresses each of these defenses below.

///

### A. No theory of preemption applies to the negligent operation of a residential computer network.

Defendant Phimpasouk is correct that 17 U.S.C. § 301 preempts all infringement actions that are not brought under the Copyright Act. (ECF No. 38 at 7.) The negligence claim against Defendant, however, is distinct from an infringement claim. Plaintiff does not assert that Defendant infringed on its copyright. (ECF No. 27.) To the contrary, Plaintiff's claims that Defendant is liable for the damage he caused by virtue of his negligent operation of a home network. (*Id.*) Plaintiff intends to identify and sue the individual who is responsible for the infringement. The harm caused by Defendant's negligence is a *sui generis* harm distinct from infringement. Defendant did not commit "negligent infringement" against Plaintiff's copyright; Defendant's negligence led to the infringement by someone else.

### B. Defendant Phimpasouk is ineligible for CDA § 230 immunity because Plaintiff's cause of action does not relate to the dissemination of offensive material

Defendant Phimpasouk's second argument is that Plaintiff's negligence claim is barred by section 230 of the Communications Decency Act ("CDA"). (ECF No. 38 at 7-8.) This provision prohibits, "hold[ing] interactive computer services liable for their failure to edit, withhold or restrict access to offensive material disseminated through their medium." *Blumenthal v. Drudge*, 992 F.Supp. 44, 49 (D.D.C. 1998). Defendant Phimpasouk does not cite to, nor is Plaintiff's counsel aware of, any case where a residential Internet subscriber successfully invoked section 230 immunity for torts arising from the dissemination of non-offensive material. (*See generally* ECF No. 38.) There is a simple reason why such a case does not exist: the CDA relates exclusively to offensive speech.

The CDA, was enacted to "deter and punish trafficking in obscenity, stalking, and harassment by means of computer." 47 U.S.C. § 230(b)(5). Congress recognized that holding online service providers (Facebook or Myspace) and Internet service providers (Comcast and Time Warner) liable for the offensive speech of their users would foster a "[C]hilling effect upon Internet free speech…." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330-331 (4th Cir. 1998). Such companies

would have no option but to deploy aggressive speech filters if they were exposed to tort liability for the offensive speech of their users.

The cases cited by Defendant Phimpasouk all relate to immunity from tort liability for offensive speech. (ECF No. 38 at 8.) For example, the two cases in chief relied on by Defendant in support of his section 230 immunity claim are *Delfino v. Agilent Technologies, Inc.*, 52 Cal.Rptr.3d 376 (2006) and *Kathleen R. v. City of Livermore*, 104 Cal.Rptr.2d 772 (1st Dist. 2001). In *Delfino*, an employer successfully invoked section 230 immunity to avoid tort liability for an employee's threatening and harassing e-mails. 52 Cal.Rptr.3d 376. In *Kathleen R.*, the City of Livermore, California successfully invoked section 230 immunity for the library's alleged failure to prevent a minor from accessing pornographic materials via the library's public computers. 104 Cal.Rptr.2d 772. In both instances, the speech in question was identified in the CDA's policy statements. *See* 47. U.S.C. § 230(b)(5) (ensuring vigorous enforcement of laws designed to, "deter and punish trafficking in obscenity, stalking and harassment by means of computer.")

In this case, Plaintiff is not seeking to impose liability on Defendant Phimpasouk for his, "failure to edit, withhold or restrict access to offensive material disseminated through his residential network." *Blumenthal v. Drudge*, 992 F.Supp. 44, 49 (D.D.C. 1998). Instead, Plaintiff is seeking to impose liability on Defendant for the negligent maintenance of his residential network, which allowed a third-party to commit industrial-scale infringement of Plaintiff's copyrighted works. (ECF No. 27.) There is simply no basis on which to confer section 230 immunity on Defendant.

### C. Defendant Phimpasouk owes Plaintiff a duty of care

Defendant Phimpasouk's third argument is that he owes no duty to Plaintiff. (ECF No. 38 at 9-10.) Defendant Phimpasouk bases this argument on the belief the Plaintiff is attempting to assign a duty to all Internet users regarding all copyright holders. (*Id.*) This is untrue; Defendant Phimpasouk owes a duty to Plaintiff because he had ample reason to know that infringement was taking place over his Internet connection, but negligently failed to take *any* action to prevent it. (ECF No. 27 ¶ 64) ("Plaintiff alleges that Defendant Phimpasouk knew, or should have known of, the unidentified third party's infringing actions, and, despite this, Defendant Phimpasouk directly, or indirectly,

allowed for the copying and sharing of Plaintiff's Video over the BitTorrent protocol through Defendant Phimpasouk's Internet connection, and interfered with Plaintiff's exclusive rights in the copyrighted Video."). Therefore, Defendant Phimpasouk arguments regarding the duty of all Internet users is not applicable here.

### III. Setting Aside the Entry of Default Would Result in Great Prejudice to Plaintiff

Defendant Phimpasouk argues Plaintiff will not be prejudiced by setting aside the entry of default. (ECF No. 38 at 10-11.) Defendant Phimpasouk cites *Thompson v. American Home Assurance Company* which sets forth specific examples of prejudice to Plaintiff. (ECF No. 38 at 11) (citing *Thompson v. American Home Assurance* Company, 95 F.3d 429, 433-34 (6th Cir. 1996) (explaining that for there to be prejudice "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion") This, however, is exactly the harm to Plaintiff that resulted due to Defendant Phimpasouk's delay. The evidence in this case is mainly in the form of digital data contained in computers. Due to the fleeting nature of this type of data, it is routinely destroyed or lost over time. Defendant Phimpasouk's delay has almost certainly resulted in a loss of substantial portions of this data and therefore a "loss of evidence has occurred." *Thompson*, 95 F.3d at 433-34.

Further, in order to determine the extent of the damages caused by Defendant Phimpasouk's negligence actions, Plaintiff will need the identifying information of the John Doe Defendant and his many joint tortfeasors. (ECF No. 27 at 13) ("On Count IV, an order that Defendant Phimpasouk is jointly and severally liable to the Plaintiff in the full amount of Judgment on the basis of Defendant Phimpasouk's negligence in allowing an unidentified third party access his Internet account.") As Plaintiff has routinely explained this identifying information is routinely destroyed in the normal course of business. (ECF No. 7 at 14) ("ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data.") Because much of this information has likely been destroyed, Defendant Phimpasouk's delay has "increased difficulties of discovery." *Thompson*, 95 F.3d at 433-34. Because Plaintiff will be greatly prejudice by setting aside the entry of default, the Court should deny Defendant Phimpasouk's motion.

///

///

### IV. Defendant Phimpasouk Was Properly Served

Defendant Phimpasouk argues that he was not properly served in this case, and explains that his father, a non-resident of his household, was served in his place. (ECF No. 38 at 11-12.) Plaintiff has two responses to this argument. First, there is no doubt that Defendant Phimpasouk was made aware of this litigation numerous times. Second, Defendant Phimpasouk was served with the summons on May 16 (ECF No. 28), and was serviced twice by first class mail on May 23, 2012 (ECF No. 31) and July 12, 2012 (ECF No. 36). Defendant Phimpasouk's argument that he was not properly served is not a basis to set aside the entry of default.

### CONCLUSION

The Court should deny Defendant Phimpasouk's motion to set aside the entry of default. Defendant Phimpasouk's culpable conduct led to the entry of default. Defendant Phimpasouk has not set forth a meritorious defense. Setting aside the entry of default would result in great prejudice to Plaintiff. Defendant Phimpasouk was properly served.

Respectfully Submitted,

Hard Drive Productions, Inc.,

**DATED: August 9, 2012**

By: ____/s/  Brett L. Gibbs, Esq._____

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

Case4:11-cv-03826-DMR   Document42   Filed08/09/12   Page9 of 9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 9, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

**DATED: August 9, 2012**　　　　　　By:　　　　　　/s/ Brett L. Gibbs, Esq.

9

RESPONSE IN OPPOSITION TO MOTION TO SET ASIDE ENTRY OF DEFAULT    NO. 11-03826 DMR